**Danielle Friedman DIXEY, Plaintiff,**

v.

**JEWISH CHILD CARE ASSOCIATION; Hillary Volper, individually and as an employee of the Jewish Child Care Association, Defendants.**

**No. 80 Civ. 3727 (KTD).**

United States District Court,
S. D. New York.

Aug. 20, 1981.

Guggenheim & Tugendrajch, New York City, for plaintiff; Lydia Tugendrajch, Martin Guggenheim, New York City, of counsel.

Bower & Gardner, New York City, for defendants; Barry G. Saretsky, New York City, of counsel.

## OPINION

KEVIN THOMAS DUFFY, District Judge:

Plaintiff brings this action against the Jewish Child Care Association [the "JCCA"] and Hillary Volper pursuant to 42 U.S.C. § 1983 and the Constitution seeking money damages for the loss of physical custody of her child. Plaintiff claims that this loss was caused by defendants' negligence in fulfilling their duties under state law and their efforts to destroy the parent-child relationship between plaintiff and her son. Plaintiff also asserts pendent claims for the alleged violation of her right to family integrity in contravention of New York State law and for defendant Volper's failure to fulfill her professional responsibilities to plaintiff and her child.

Defendants now move to dismiss the complaint pursuant to Rules 12(b)(1) and 12(h)(3) of the Federal Rules of Civil Procedure on the ground that this court lacks subject matter jurisdiction.

### I.

Plaintiff is the natural mother of Jonathan Dixey, born June 12, 1968. Defendant JCCA is an agency authorized by New York State to place children in foster homes. Defendant Hillary Volper, a certified social worker, was an employee of the JCCA and the case worker assigned to the Dixey case for a period of time.

Plaintiff placed Jonathan in the care of the JCCA on July 16, 1971. The JCCA then placed Jonathan in the foster home of Arthur and Shirley Schwartz. Plaintiff continued to consent to such care until four and one-half years later when she asked the Agency to return her child within six months. At the specified time, however, the plaintiff stated that she was unable to take the child due to a temporary housing problem.

Six months later, the JCCA instituted a proceeding in the Family Court to terminate plaintiff's parental rights. The JCCA instituted this proceeding pursuant to New York laws which provide for the termina-

tion of the natural parent's rights to a child if the child is "permanently neglected" by that parent. New York Family Court Act § 611; New York Social Services Law § 384–b(7). For purposes of such a proceeding, a permanently neglected child is

> ... a child who is in the care of an authorized Agency and whose parent or custodian has failed for a period of more than one year following the date such child came into the care of an authorized Agency substantially and continuously or repeatedly to maintain contact with or plan for the future of the child, although physically and financially able to do so, notwithstanding the Agency's diligent efforts to encourage and strengthen the parental relationship when such efforts will not be detrimental to the best interests of the child.

New York Social Services Law § 384–b(7).

A fact-finding and dispositional hearing on the JCCA's petition was held by the Family Court. On July 21, 1977, the Family Court found that the plaintiff had neither abandoned nor permanently neglected Jonathan. The court directed that Jonathan be returned to plaintiff at the end of the 1978 school year. In addition, the court stated that, "Although several caseworkers were involved with this mother, there was a total lack of coordination in their efforts. Hardly the kind of diligent effort that the Agency is legally required to make in order to promote the parent-child relationship." *In the Matter of Jonathan Dixey*, Docket No. B–4873/76.

On appeal by the JCCA, the Family Court's order was modified, deleting the directive to return the child to the plaintiff. The matter was remanded to the Family Court to decide the custody issue with an inquiry into the child's best interests. On December 11, 1978, the court concluded that it was in Jonathan's best interests to continue his placement in the foster home with continued visitation for the plaintiff. *Matter of Jonathan D.*, 97 Misc.2d 859, 412 N.Y.S.2d 733 (1978).

The most recent hearing concerning Jonathan's status was held by Family Court Judge Sheldon M. Rand. In an Order of Disposition dated April 8, 1981, Judge Rand continued foster care of Jonathan without objection by plaintiff.

In 1980, plaintiff instituted suit invoking the jurisdiction of this court under 42 U.S.C. § 1983 and the United States Constitution. Plaintiff alleged that her family was deprived unlawfully of its constitutional right to remain together as a result of defendants' failure to make diligent efforts to assist, develop and encourage a meaningful relationship between plaintiff and her child as required by New York law. Plaintiff also argues that the defendants took steps to destroy plaintiff's relationship with her child. She contends, therefore, that under § 1983 she is entitled to recover compensatory and punitive damages. Plaintiff also asserts pendent claims involving negligence and violations of state law.

The defendants move to dismiss plaintiff's suit on the grounds that this court lacks subject matter jurisdiction. The defendants do not dispute that plaintiff is protected under the Constitution from intrusion upon her family life absent a compelling reason. They argue, however, that plaintiff's Constitutional rights have not been violated. The JCCA also contends that, even assuming it breached its duty under New York law, such a breach does not constitute a violation of constitutional proportions necessary to sustain a claim under 42 U.S.C. § 1983.

## II.

The first basis for plaintiff's § 1983 claim is the Family Court's statement that the JCCA failed to fulfill its due diligence obligations under New York law. A mere allegation of the violation of a state law, however, is not necessarily a basis for a claim under § 1983.

Plaintiff must make two showings before § 1983 liability may be imposed on an agency for the non-performance of affirmative duties. First, the officials in charge of the agency must have displayed a deliberate indifference to plaintiff's consti-

tutional rights. *Doe v. New York City Department of Social Services, et al.*, 649 F.2d 134 (2d Cir. 1981). Second, the omission must have been a substantial factor leading to the denial of a Constitutionally protected liberty.

Plaintiff contends that the JCCA's alleged failure to perform its due diligence duties under New York Social Services Law § 384–b(7) constitutes deliberate indifference to the constitutional right of a family to remain together. Plaintiff also argues that the JCCA's failure caused the unnecessary continuation of Jonathan in a foster home and, thus, unlawfully deprived her of her constitutional right to physical custody of Jonathan.

■ Even assuming that the JCCA's alleged breach of its due diligence responsibilities constituted "deliberate indifference," plaintiff has failed to satisfactorily allege a causal link between the JCCA's failure and the continuation of Jonathan in the foster home. While the JCCA's failure to comply with its statutory duties probably did not help to engender the reunion of plaintiff's family, there is nothing in the pleadings which indicates that it actually interfered with plaintiff's family life. If anything, the continuation of Jonathan's foster care was caused by plaintiff's own actions. Plaintiff voluntarily placed her son in foster care and continued to consent to such care for the next four and one-half years. She then requested that the agency return Jonathan to her in six months. When the return date arrived, however, plaintiff informed the agency that she could not take Jonathan. To this day, plaintiff continues to consent to the placement of Jonathan in foster care. Since her one attempt to reclaim Jonathan after four and one-half years in foster care, plaintiff has not sought custody of her son. It is also important to note that even now, plaintiff does not seek the return of her son, but merely money damages.

■ It may also be true that had the JCCA acted in accordance with its statutory obligations, Jonathan might have been reunited with the plaintiff. Parents, however, do not have a constitutional right to rely on an agency to strengthen and reunite their families even if that agency has a statutory duty to do so. *See Child v. Beame*, 412 F.Supp. 593 (S.D.N.Y.1976). The responsibility for family unity lies first and foremost with the parents. While parents may be entitled under state law to assistance in fulfilling this responsibility, there is no constitutional mandate requiring the state or an agency to act affirmatively in this regard.

In sum, I hold that plaintiff has failed to transform a possible violation of a state statute into a claim of constitutional magnitude. Plaintiff's redress, if any, lies in the state court.

■ The second basis for plaintiff's § 1983 claim is an allegation that defendants acted affirmatively to destroy the relationship between plaintiff and her son. Plaintiff alleges that

(1) On June 15, 1976, Ms. Volper advised plaintiff to move into a studio apartment where taking custody of Jonathan would have been impossible;

(2) The JCCA severed plaintiff's visitation rights on October 11, 1976 and, thereafter, petitioned the Family Court to terminate plaintiff's parental rights to Jonathan. These incidents, even if true, do not rise to the level of a violation under 42 U.S.C. § 1983. Again, plaintiff must demonstrate the requisite deliberate indifference on the part of the defendants and a Constitutional deprivation to establish a § 1983 claim. In this case, it is difficult to see how the alleged actions reflect a deliberate indifference to plaintiff's constitutional rights. However, even if these acts did constitute such indifference, it cannot be said that any of the alleged acts was a "substantial factor" in the continuation of Jonathan's foster care. Ms. Volper's suggestion that plaintiff move into a less expensive apartment was never acted upon, defendant's termination petition was denied and plaintiff's visitation rights were continued. Thus, even if the defendants were attempting to impermissibly deprive plaintiff of

custody, they were unsuccessful in doing so. Moreover, the Family Court's decision to continue Jonathan in foster care was based primarily on the number of years Jonathan had lived with his foster parents. Jonathan was in foster care five years before any of the alleged actions were taken by the defendants. As discussed earlier, the duration of Jonathan's foster care was a consequence of plaintiff's continued consent to such care. None of the affirmative acts by the defendants cited by the plaintiff are to blame.

Accordingly, the defendant's motion to dismiss for lack of subject matter jurisdiction is granted. Since the federal claims are dismissed, the pendent state claims must be dismissed as well. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).