James P. DONAHUE, William J. Perez, and Harry J. Thornton, Plaintiffs,

v.

PENDLETON WOOLEN MILLS, INC., Defendant.

No. 84 Civ. 7149 (MGC).

United States District Court, S.D. New York.

Aug. 29, 1988.

Wisehart & Koch, New York City by Arthur M. Wisehart, Paula C. Rowe, for plaintiffs.

Schnader, Harrison, Segal & Lewis, Philadelphia, Pa. by Nicholas N. Price, Spears, Lubersky, Campbell, Bledsoe, Anderson & Young, Portland, Or. by Wayne Hilliard, for defendant.

OPINION AND ORDER

CEDARBAUM, District Judge.

Plaintiff Harry J. Thornton has moved for reargument of this Court's decision granting summary judgment for defendant

Pendleton Woolen Mills, Inc. ("Pendleton") on Thornton's claim pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*. For the reasons discussed below, Thornton's motion is granted and his ADEA claim is reinstated.

## BACKGROUND

· The facts concerning this action are set out in an earlier opinion in this case, *Donahue v. Pendleton*, 84 Civ. 7149 (S.D.N.Y. April 12, 1988), familiarity with which is assumed. Only the facts relevant to the determination of this motion will be repeated here.

On August 4, 1983, Pendleton sent Thornton an interoffice letter entitled "Termination Recommendation." In that letter, Pendleton placed Thornton on probation and informed him that "[i]f significant improvement is not noted after a probationary year, then we will need to sever our relationship." That letter prompted Thornton, on April 24, 1984, to file a charge with the New York State Division of Human Rights ("DHR") and the Equal Employment Opportunity Commission ("EEOC") complaining that the reasons Pendleton offered for putting him on probation were false and a pretext, and that the action was motivated by Pendleton's desire to terminate him because of his age. Just over one year after receiving the "Termination Recommendation", on August 16, 1984, Thornton was discharged by Pendleton. Almost three years later, after the commencement of this lawsuit and after the filing by Pendleton of a motion for summary judgment on June 18, 1987, Thornton, on August 4, 1987, filed an age discrimination complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO"). On or about August 10, 1987, the Connecticut CHRO "administratively dismissed" Thornton's complaint on the ground that it was time-barred, and on the mistaken ground that the filing with the New York DHR had led to resolution of the dispute.

In its summary judgment motion, Pendleton argued that pursuant to § 14(b) of the ADEA, 29 U.S.C. § 633(b) [1], New York was not the proper jurisdiction in which to file Thornton's state administrative claim since the alleged unlawful practice occurred in Connecticut rather than in New York. Pendleton also argued that since Thornton's complaint was filed with the EEOC prior to his termination, the scope of that timely complaint did not cover the termination itself and therefore Thornton cannot now sue under the ADEA for his termination.

Addressing the issue of whether the New York filing was sufficient to satisfy the requirements of § 14(b) of the ADEA, I held that "Thornton's vague links to business activities for Pendleton in New York [did] not reasonably support the conclusion that the age discrimination of which Thornton complains 'occurred' in New York," slip op. at 17, and therefore granted summary judgment to Pendleton.

Thornton now argues that his later filing with the Connecticut CHRO satisfies the prerequisites of ADEA § 14(b).

## DISCUSSION

▆ Thornton's motion for reargument is untimely. Civil Rule 3(j) of the Rules of the United States District Courts for the Southern and Eastern District Courts of New York provides that a "notice of motion for reargument shall be served within ten (10) days after the docketing of the court's determination of the original motion. . . ." Pendleton's motion for sum-

---

**1.** Section 14(b) of the ADEA provides that:

In the case of an alleged unlawful practice occurring in a State which has a law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or seek relief from such discriminatory practice, no suit may be brought ... before the expiration of sixty days after proceedings have been commenced un-

der the State law. . . .
29 U.S.C. § 633(b). States which have established such a "State authority" are known as "deferral states." Resort to state agencies in "deferral states" is mandatory, not optional. *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 756, 99 S.Ct. 2066, 2071, 60 L.Ed.2d 609 (1979). Both New York and Connecticut are deferral states.

mary judgment was granted on April 12, 1988, and that determination was docketed on April 13, 1988. Pendleton filed a timely motion for reargument on April 22, 1988, and Thornton, on May 9, 1988, filed a "cross-motion" for reargument. Labelling his motion for reargument a "cross-motion" did not make his otherwise untimely motion timely. Notwithstanding the foregoing, because further examination of the law shows that Thornton is entitled to proceed on his ADEA claim, it would not be in the interest of justice to dismiss this motion at this time. Therefore, I treat this motion as timely and decide it on the merits. *See Lund v. Chemical Bank,* 675 F.Supp. 815, 817 (S.D.N.Y.1987).

The standard for ruling on a motion to reargue is set forth in *United States v. International Business Machines Corp.,* 79 F.R.D. 412 (S.D.N.Y.1978):

> The strong interest in finality and the procedural directions of Local General Rule [3(j)] lead this court to conclude that the only proper ground for a motion for reargument is that the court has overlooked 'matters or controlling decisions' which, had they been considered, might reasonably have altered the result reached by the court.

*Id.* at 414; *see also Passalacqua Builders, Inc. v. Resnick Developers South, Inc.,* 611 F.Supp. 281 (S.D.N.Y.1985).

▪ Thornton's argument that his Connecticut filing satisfies the prerequisites of the ADEA is being urged now for the first time. While the relevant Supreme Court case on this point, *Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979), was previously cited to the Court for a different proposition, the controlling case in this Circuit, *Reinhard v. Fairfield Maxwell, Ltd.,* 707 F.2d 697 (2d Cir.1983), has never been cited by either party. Since the controlling authorities on this issue were overlooked, I now address these cases.

In *Oscar Mayer,* the Supreme Court analyzed § 14(b) of the ADEA and held that "resort to administrative remedies in deferral States by individual claimants is mandatory, not optional." *Id.* at 758, 99 S.Ct. at

2072. The Court then went on to consider the consequences of respondent's failure to file a complaint with the appropriate state administrative agency, and noted that § 14(b) "requires only that the grievant *commence* state proceedings ..." *id.* at 759, 99 S.Ct. at 2073, and that "a state proceeding will be deemed commenced for purposes of [§ 14(b)] as soon as the complaint is filed," *id.* at 760, 99 S.Ct. at 2073. The Court concluded:

> We therefore hold that respondent may yet comply with the requirements of § [633(b)] by simply filing a signed complaint with the Iowa State Civil Rights Commission. That Commission must be given an opportunity to entertain respondent's grievance before his federal litigation can continue. Meanwhile, the federal suit should be held in abeyance. If, as respondent fears, his state complaint is subsequently dismissed as untimely, respondent may then return to federal court.

*Id.* at 764–65, 99 S.Ct. at 2076.

Thornton, relying on *Oscar Mayer,* contends that his filing with the Connecticut CHRO was sufficient to "commence" state proceedings, and that since the CHRO has held his complaint to be untimely, he should be permitted to proceed with his ADEA action in federal court.

Pendleton relies on *Cornett v. AVCO Financial Services,* 792 F.2d 447 (4th Cir. 1986) and *Smith v. General Scanning, Inc.,* 832 F.2d 96 (7th Cir.1987). Those cases read *Oscar Mayer* as authorizing, though not compelling extensions of relief when the circumstances warrant. They hold that whether to allow a belated filing with the appropriate state agency is a matter committed to the discretion of the district court, to be governed by equitable principles. The Fourth Circuit in *Cornett* stated that the Supreme Court's extension of relief in *Oscar Mayer* "simply reflected the Court's appreciation of the possible unfairness of applying its just-announced mandatory state-filing interpretation of § 14(b) to the claimant in that case." *Cornett v. AVCO,* 792 F.2d at 450. Pendleton urges that this Court adopt the Fourth and

Seventh Circuits' reading of *Oscar Mayer*, and argues that the equities in this case do not warrant the allowance of a belated state filing.

*Reinhard v. Fairfield Maxwell, Ltd.*, 707 F.2d 697 (2d Cir.1983) is the controlling case in this Circuit, and is factually very similar to the present controversy. In *Reinhard*, the plaintiff commenced his ADEA action in November of 1981. In January of 1982, defendant moved for summary judgment on the ground that plaintiff had not commenced a proceeding before the appropriate state agency. Following the filing of the summary judgment motion, on February 5, 1982, plaintiff filed a complaint with the New York DHR. On February 23, 1982, plaintiff was advised by the DHR that it would not entertain his complaint because the state statute of limitations governing his claim had run. Plaintiff opposed summary judgment on the ground that his February 5, 1982 complaint was sufficient to satisfy the requirements of ADEA § 14(b). The Second Circuit, after analyzing the relief granted in *Oscar Mayer* and without analyzing the equities of the particular case, held that plaintiff's February 5, 1982 complaint to the DHR fulfilled the requirements of § 14(b), "and that upon DHR's February 23 rejection of that complaint as untimely under state law, [plaintiff] was entitled to pursue the present action." *Id.* at 701.

Here, since Thornton did "commence" state proceedings in the appropriate state by filing a complaint with the Connecticut CHRO, and since the complaint was dismissed as untimely under state law, on the authority of *Oscar Mayer* and *Reinhard*, Thornton is entitled to pursue the present action.

■ Since I find that Thornton has satisfied the filing requirements of § 14(b), I must address Pendleton's alternative argument that Thornton's filing with the EEOC did not properly raise his subsequent termination, as opposed to harassment on the job and discriminatory placement on probation, and that therefore Thornton's claim of discriminatory termination does not fall within the scope of his EEOC filing.

"No action based on a claim of age discrimination may be brought in federal court unless the claim was properly raised with the EEOC, i.e., within the permissible time limit for filing the claim with the EEOC, and within the scope of the EEOC investigation reasonably expected to grow out of that filing." *Miller v. International Telephone and Telegraph Corp.*, 755 F.2d 20, 23–24 (2d Cir.1985) (citations omitted). The purpose of this notice provision, "which is to encourage settlement of discrimination disputes through conciliation and voluntary compliance, would be defeated if a complainant could litigate a claim not previously presented to and investigated by the EEOC." *Id.* at 26.

Under the ADEA, a victim of age discrimination in a deferral state must file his charge with the EEOC within 300 days after the discriminatory action or within 30 days after the end of the state investigation, whichever is earlier. 29 U.S.C. § 626(d). The only timely filing with the EEOC in this case was on April 24, 1984, several months prior to Thornton's termination. Therefore, the question is whether Thornton's termination was within the scope of the EEOC investigation reasonably expected to grow out of his filing.

Thornton's filing with the EEOC complained about a letter from Pendleton entitled "Termination Recommendation." The letter stated that "[i]f significant improvement is not noted after a probationary year, then we will need to sever our relationship." Thornton's EEOC filing alleged that the reasons stated in the letter for putting him on probation were pretextual and were part of a program adopted by Pendleton to harass and terminate its older sales representatives. Thornton further alleged that from the date of receiving the letter to the time of the filing of his EEOC complaint, Pendleton had continued to harass him and had thereby placed his "career and [his] continuing employment ... in jeopardy." Finally, Thornton's EEOC complaint made clear his fear that Pendleton planned to terminate him because of his age. *See* Plaintiffs' Appendix Volume I, exhibit 93.

It is established that district courts may assume jurisdiction over a claim "reasonably related" to a charge filed with the EEOC, "including incidents occurring after the filing of the EEOC claim." *Stewart v. United States I.N.S.*, 762 F.2d 193, 198 (2d Cir.1985), citing *Almendral v. New York State Office of Mental Health*, 743 F.2d 963, 967 (2d Cir.1984); and *Kirkland v. Buffalo Board of Education*, 622 F.2d 1066, 1068 (2d Cir.1980). Thornton's EEOC complaint plainly stated that his termination was imminent. That Thornton was ultimately terminated, as he predicted he would be, is clearly related to the charges contained in his EEOC complaint that Pendleton was systematically harassing and terminating older employees. Therefore, Thornton is not barred from proceeding on his claim of discriminatory termination.

## CONCLUSION

Plaintiff Thornton's motion for reargument is granted, and upon reconsideration, defendant's motion for summary judgment on Thornton's ADEA claim is denied.

SO ORDERED.